IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BOB ROBISON COMMERCIAL
FLOORING, INC.                                                                                    PLAINTIFF

v.                                        Case No. 3:22-cv-00150-KGB

RLI INSURANCE COMPANY                                                            DEFENDANT

## OPINION AND ORDER

Before the Court is defendant RLI Insurance Company's ("RLI") motion for summary judgment (Dkt. No. 25). Plaintiff Bob Robison Commercial Flooring, Inc. ("BRCF") timely filed plaintiff's response in opposition to defendant's motion for summary judgment (Dkt. No. 30). RLI timely filed a reply in support of the motion for summary judgment (Dkt. No. 32).

### I.      Factual Background

Unless otherwise noted, the following facts are taken from RLI's statement of material facts and annex to motion for summary judgment and BRCF's response to the statement of material facts (Dkt. Nos. 27; 29).

The parties agree that BRCF filed a verified complaint against RLI in the Circuit Court of Craighead County, Arkansas, on May 18, 2022, seeking declaratory relief and alleging that RLI breached an insurance contract issued to BRCF when RLI denied BRCF's claim for damage to a vinyl gym floor that BRCF was installing at the Trumann, Arkansas, Middle School (Dkt. Nos. 27, ¶ 1; 29, ¶ 1). RLI timely and properly removed the case to this Court based on diversity of citizenship jurisdiction (Dkt. Nos. 27, ¶ 1; 29, ¶ 1).

RLI issued RLI Marine Policy ILM0303051 with Arkansas amendatory endorsements to BRCF effective June 11, 2021, to June 11, 2022 (the "Policy") (Dkt. Nos. 27, ¶ 2; 29, ¶ 2). The Installation Floater Coverage Reporting Form provides as follows:

In this coverage form, the words "you" and "your" mean the persons or organizations named as the insured on the declarations and the words "we", "us", and "our" mean the company providing this coverage.

. . .

**PROPERTY COVERED**

"We" cover only the following property and only to the extent the property is not otherwise excluded or subject to limitations.

1. **Coverage** – "We" cover direct physical loss or damage caused by a covered peril to:

   a. "your" materials, supplies, fixtures, machinery, or equipment; and
   b. Similar property of others that is in "your" care, custody, or control while at "your" "jobsite" and that "you" are installing, constructing, or rigging as part of an "installation project".

2. **Coverage Limitation** – Except as provided under Supplemental Coverages - Business Personal Property, "we" only cover materials, supplies, machinery, fixtures, and equipment that will become a permanent part of "your" completed "installation project".

3. **We Do Not Cover** – "We" do not cover materials, supplies, fixtures, machinery, or equipment that "you" are not or will not be installing, constructing, or rigging.

4. **We Do not Pay** – "We" do not pay for any penalties for:

   a. noncompletion or late completion of an "installation project" in accordance with the provisions or conditions in the installation or construction contract; or

   b. noncompliance with any provisions or conditions in the installation or construction contract.

5. **Limit** – The most "we" will pay in any one occurrence for loss or damage to materials, supplies, machinery, fixtures, and equipment at any one "jobsite" is the Jobsite Limit indicated on the "schedule of coverages".

. . . .

**PERILS COVERED**

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

**PERILS EXCLUDED**

. . . .

2.   "We" do not pay for loss or damage that is caused by or results from one or more of the following:

     . . .

   d.   **"Defects, Errors, Or Omissions In Property"** – "We" do not pay for loss or damage caused by or resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to:

      1)  design or specifications;

      2)  workmanship or construction; or

      3)  repair, renovation, or remodeling.

      But if a defect, error or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

(Dkt. Nos. 27, ¶ 2; 29, ¶ 2).  On April 8, 2021, BRCF submitted a bid to general contractor Nabholz Construction Corporation to install a vinyl athletic floor and striping according to specifications in the gym of the Trumann, Arkansas, Middle School (Dkt. Nos. 27, ¶ 3; 29, ¶ 3). Through change orders, the job was expanded to include the installation of flooring in a "back gym," and the painting of a "Wildcat" logo on the main gym floor (Dkt. Nos. 27, ¶ 3; 29, ¶ 3).

RLI asserts:

Plaintiff concedes that Plaintiff contracted with Nabholz to provide an installed floor properly painted to the contract specifications.  In other words, the Plaintiff's work product for the project was supposed to be the installed floors with proper painting and striping.

(Dkt. No. 27, ¶ 4).  BRCF dispute this assertion, responding:

The Plaintiff, Bob Robison Commercial Flooring, Inc., does not agree with the factual statements of Paragraph Four of the Defendant's Statement of Material

Facts to extent [sic] that the floor was rejected due to the workmanship of an independent subcontractor Mr. Liles, contracted to the Plaintiff, Bob Robison Commercial Flooring, Inc.

(Dkt. No. 29, ¶ 4).

However, the parties agree that BRCF subcontracted the painting portion of its work on the project to Robert Liles and Robert Liles Parking Lot Services ("Liles") (Dkt. Nos. 27, ¶ 5; 29, ¶ 5). Liles was given specifications and drawings for the line striping before he began work on about November 29, 2021 (Dkt. Nos. 27, ¶ 5; 29, ¶ 5). BRCF did not supervise or inspect Liles' work while it was ongoing (Dkt. Nos. 27, ¶ 5; 29 ¶ 5).

On December 9 and 10, 2021, Nabholz informed BRCF that it had "major problems" with the floor painting, including crooked lines, incorrect markings, misplacement of the three-point lines for the basketball surface, drips, smudges, "bleeding" where the lines were improperly masked prior to painting, and the failure to complete the black painting (Dkt. Nos. 27, ¶ 6; 29, ¶ 6).

At a meeting with Nabholz and the project architect on December 13, 2021, BRCF was informed that the gym floor was being rejected because the paint and markings did not meet specifications (Dkt. Nos. 27, ¶ 7; 29, ¶ 7). The rejection of the floor was due to the poor workmanship of BRCF's subcontractor, Liles, in applying the markings and paint (Dkt. Nos. 27, ¶ 7; 29, ¶ 7).

Because of the nature of the vinyl flooring, once primer and paint are applied, the paint cannot be removed and repainted. For the floor to meet specifications, the flooring had to be removed, new flooring installed, and then new lines and marking painted by a new subcontractor (Dkt. Nos. 27, ¶ 8; 29, ¶ 8). BRCF's ultimate cost for the removal and replacement of the non-compliant flooring was $134,188.95 (Dkt. Nos. 27, ¶ 8; 29, ¶ 8).

The parties agree that, other than Liles' improper application of the painting, there was no other or separate damage or peril to the floor (Dkt. Nos. 27, ¶ 9; 29, ¶ 9). The only reason the floor was rejected and had to be torn out was because it did not meet specifications, and that was due to the workmanship of BRCF's subcontractor, Mr. Liles (Dkt. Nos. 27, ¶ 9; 29, ¶ 9). The loss to the floor was "just a failure of the workmen to do the job the way they were supposed to do it." (Dkt. Nos. 27, ¶ 9; 29, ¶ 9).

The Policy was not a warranty for the work BRCF performs (Dkt. Nos. 27, ¶ 10; 29, ¶ 10). On January 24, 2022, after submitting the loss to Liles' liability insurance carrier and having the claim denied, BRCF, through its broker, Cashion Company, Inc., submitted a Proof of Loss (the "Claim") to RLI relating to the replacement of the Trumann gym flooring (Dkt. Nos. 27, ¶ 11; 29, ¶ 11).

After an investigation and consideration of the Policy, RLI denied BRCF's Claim on February 22, 2022, for the reasons stated in the denial letter (Dkt. Nos. 27, ¶ 12; 29, ¶ 12). After BRCF's counsel requested reconsideration and RLI's counsel responded, this lawsuit ensued (Dkt. Nos. 27, ¶ 13; 29, ¶ 13). BRCF affirmatively asserts that it does not seek any part of the cost of repainting the flooring on the project, only the cost of the underlying flooring (Dkt. No. 29, ¶ 14).

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the

dispute must be outcome determinative under the prevailing law." *Hollway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.    Discussion

BRCF seeks a declaratory judgment that RLI's Policy provides coverage for the damage to the vinyl floor caused by the subcontractor's negligent paint job, and BRCF asserts that RLI breached its contract by failing to pay BRCF's claim for the damage caused to the vinyl wood floor caused by the painter's negligence (Dkt. No. 2, ¶¶ 38, 42).  RLI contends that summary judgment should be entered in favor of RLI and that BRCF's lawsuit should be dismissed because the Policy language unambiguously excludes a loss caused by a defect in workmanship or construction from coverage under the Policy; because it is undisputed that the only damage occurred as a result of the subcontractor's misapplication of the paint, not as a result of any ensuing peril or loss; and because RLI did not breach the Policy by denying coverage for the claim (Dkt. No. 25, ¶ 3).

### A.    Arkansas Law Construing Insurance Contracts

"State law governs the interpretation of insurance policies where federal jurisdiction is based on diversity of citizenship." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th

Cir. 2012).  The policy at issue in this case includes an Arkansas Amendatory Endorsement but does not include a specific choice of law provision (Dkt. No. 26-1).  RLI and BRCF, in their relevant filings, agree that Arkansas law is to be applied to the insurance contract at issue (Dkt. Nos. 28, at 10; 31, at 5).  *See Kaufmann v. Siemens Medical Solutions, USA, Inc.*, 638 F.3d 840, 843 (8th Cir. 2011) ("Our subject matter jurisdiction in this case is based upon diversity of citizenship, and the parties agree that Iowa law governs our analysis.") (citing *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir. 2010)).  Accordingly, the Court will apply Arkansas law to the dispute.

Arkansas law "regarding the construction of an insurance contract is well settled."  *Norris v. State Farm Fire & Cas. Co.*, 16 S.W.3d 242, 244 (Ark. 2000).  "The language in an insurance policy is to be construed in its plain, ordinary, popular sense."  *Id.* (citing *CNA Ins. Co. v. McGinnis*, 666 S.W.2d 689, 691 (Ark. 1984)).  "Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language."  *Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560 (Ark. 2004) (citing *Norris*, 16 S.W.3d at 242).  "If the language of the policy is unambiguous," then the Court must "give effect to the plain language of the policy without resorting to the rules of construction."  *Id.* (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001)).  Alternatively, if the language of the policy is ambiguous, the Court must "construe the policy liberally in favor of the insured and strictly against the insurer."  *Id.* (citing *Elam*, 57 S.W.3d at 169).

"The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid."  *Castaneda*, 166 S.W.3d at 561 (citing *Southern Farm Bureau Casualty Ins. Co. v. Williams*, 543 S.W.2d 467 (Ark. 1976)).  The Arkansas Supreme Court

has "established as a guideline of contract interpretation that the different clauses of a contract must be read together and that the contract should be construed so that all parts harmonize." *Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 207 (Ark. 2003) (citing *Cont'l Cas. Co. v. Davidson,* 463 S.W.2d 652, 655 (Ark. 1971)). "Construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." *Id.* (citing *Cont'l Cas. Co.*, 463 S.W.2d at 655).

"Under Arkansas law, the fact that a term is not defined in a policy does not necessarily render it ambiguous . . . ." *Essex Ins. Co. v. Holder*, 261 S.W.3d 456, 460 (Ark. 2007) (citing *Smith*, 114 S.W.3d at 207). "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Castaneda*, 166 S.W.3d at 561 (citing *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696, 701 (Ark. 2002)). Whether an insurance policy is ambiguous is a question of law to be resolved by the Court. *Id.* "Although the meaning of an ambiguity may become a question for the fact-finder if parole evidence has been admitted to resolve that ambiguity, *see Minerva Enterprises, Inc. v. Bituminous Casualty Corp.,* 312 Ark. 128, 851 S.W.2d 403 (1993), where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law." *Smith v. Prudential Prop. & Cas. Ins. Co.*, 10 S.W.3d 846, 850 (Ark. 2000) (citing *Duvall v. Massachusetts Indem. & Life Ins. Co.,* 748 S.W.2d 650, 651 (Ark. 1988); *Security Ins. Co. v. Owen,* 480 S.W.2d 558, 561 (Ark. 1972)).

### B.    Relevant Policy Language

RLI's policy states:

**PROPERTY COVERED**

"We" cover only the following property and only to the extent the property is not otherwise excluded or subject to limitations.

8

. . .

1.   **Coverage** – "We" cover direct physical loss or damage caused by a covered peril to:

    **a.**   "your" materials, supplies, fixtures, machinery, or equipment; and

    **b.**   Similar property of others that is in "your" care, custody, or control while at "your" "jobsite" and that "you" are installing, constructing, or rigging as part of an "installation project".

2.   **Coverage Limitation** – Except as provided under Supplemental Coverages – Business Personal Property, "we" only cover materials, supplies, machinery, fixtures, and equipment that will become a permanent part of "your" completed "installation project".

3**.**   **We Do Not Cover** – "We" do not cover materials, supplies, fixtures, machinery, or equipment that "you" are not or will not be installing, constructing, or rigging.

4.   **We Do not Pay** – "We" do not pay for any penalties for:

    **a.**   noncompletion or late completion of an "installation project" in accordance with the provisions or conditions in the installation or construction contract; or

    **b.**   noncompliance with any provisions or conditions in the installation or construction contract.

5.   **Limit** – The most "we" will pay in any one occurrence for loss or damage to materials, supplies, machinery, fixtures, and equipment at any one "jobsite" is the Jobsite Limit indicated on the "schedule of coverages".

. . . .

## PERILS COVERED

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

. . . .

2.   "We" do not pay for loss or damage that is caused by or results from one or more of the following:

     . . .

d. **"Defects, Errors, Or Omissions In Property"** – "We" do not pay for loss or damage caused by or resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to:

1) design or specifications;

2) workmanship or construction; or

3) repair, renovation, or remodeling.

But if a defect, error or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

(Dkt. Nos. 27, ¶ 2; 29, ¶ 2).

This language is an example of an all-risk policy. All-risk policies are those "in which the insurer undertakes the risk for all losses of a fortuitous nature that, in the absence of the insured's fraud or other intentional misconduct, is not expressly excluded in the agreement." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 510 (5th Cir. 2020) (quoting *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 604 (Tex. 2015)). Additionally, the language stating "if a defect, error or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril" may be classified as an ensuing loss provision, despite the fact that the word "ensuing" is not present. *See* 968 F.3d at 511.

C. **Analysis**

1. **Arkansas Law On This Policy**

This Court is not aware of a binding Arkansas case that construes the Policy language with respect to the exclusion at issue, nor is the Court aware of a binding case that addresses the extent of coverage under an ensuing loss provision such as the one presented.

However, in an unpublished opinion, the Arkansas Supreme Court construed similar exclusionary policy language. *See U.S.F & G v. Forbess Const. Co.*, 262 Ark. N-316, N-317–N-

318 (1978).  The *U.S.F &G* Court held that an insurance policy did not cover property stolen from a house that was under construction when the policy language stated:

> SECTION I—COVERAGE
>
> THIS POLICY IS EXTENDED TO INSURE AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS, EXCEPT AS HEREINAFTER PROVIDED, subject to the provisions and stipulations in this form and subject to the provisions in the policy to which this form is attached including endorsements thereon.
>
> . . .
>
> SECTION II—EXCLUSIONS THIS POLICY DOES NOT INSURE AGAINST LOSS—
>
> . . .
>
> E.  By theft of any property:  (1) . . . (2) from a dwelling building or private structure in process of construction; unless loss from a peril not excluded in this policy ensues from theft or attempted theft, and then this Company shall be liable for only such ensuing loss.

*U.S.F & G*, 262 Ark. at N-317–N-318.  The trial court below determined that there was an ambiguity in the policy language, but the Arkansas Supreme Court determined there was no ambiguity.  262 Ark. at N-318.  The Arkansas Supreme Court distinguished between the description of the coverage afforded, as quoted above, and a description of the property insured. *Id.*  The facts of *U.S.F & G* are somewhat analogous to the case at bar in that an uncovered act—theft—led to an uncovered loss—the value of the stolen items.  The court in *U.S.F & G* did not specifically address what qualifies as an ensuing loss under the policy language, given the facts of that case.

The Arkansas Supreme Court has also addressed insurance policy language that specifically excluded— rather than included—liability for ensuing losses in *Ratliff Enterprises, Inc. v. American Employers Insurance Co.*, 975 S.W.2d 837, 838 (Ark. 1998).  *Ratliff Enterprises* involved an ice manufacturing plant where "an ammonia filter ruptured on an icemaker, leading

to the escape of liquid ammonia that vaporized and entered the control panel of one of the ice machines." *Id.* This caused an explosion, "and the entire plant was heavily damaged in the ensuing fire." *Id.* The insurance policy at issue contained the following provisions:

A.  Coverage.  We will pay for direct damage to Covered Property caused by a Covered Cause of Loss.

   1.  Covered Property

   Covered property, as used in this Coverage Part, means any property that:

   a.  You own; or

   b.  Is in your care, custody, or control and for which you are legally liable.

. . .

   2.  Covered Cause of Loss

   A covered cause of loss is an "accident" to an "object" shown in the Declarations.  An "object" must be in use or connected ready for use at the location specified for it at the time of the "accident."

B.  Exclusions

We will not pay for:

4. Other exclusions

Loss caused by or resulting from:

   a.  An explosion. However, we will pay for loss caused by or resulting from an explosion of an "object" of a kind described below and only to "objects" covered by this insurance and as described on an Object Definitions endorsement . . .

   b.  Fire or explosion that occurs at the same time as an "accident" or that ensues from an "accident."  With respect to any electrical equipment forming a part of an "object," this exclusion is changed to read:

> Fire or explosion outside the "object" that occurs at the same time as an
> "accident" or ensues from an "accident" . . .

> We will not pay for any loss excluded above even though any other cause or event
> contributes concurrently or in any sequence to the loss.

*Id.*, at 839–40.  The Arkansas Supreme Court held that, although the rupture to the ammonia filter

was covered as an "accident" to an "object," the "insurance contract specifically exclude[d] from

coverage damage by fire or explosion ensuing from an accident to a covered object."  *Id.* at 840–

41.  In *Ratliff Enterpises*, a covered cause of loss led to an excluded, ensuing type of loss.  The

current case poses the opposite question: whether damage caused by an uncovered peril, here

defects, errors, or omissions relating to workmanship or construction, led to a type of loss that is

covered by the Policy.

A district court in the Western District of Arkansas recently encountered a set of facts that

raised several issues, including issues arising from facts more closely aligned with those in this

case, and the court enforced the plain language of an all-risk insurance policy that set forth specific

exclusions but that covered certain ensuing losses despite those exclusions.  *Torabi v. State Farm

Fire & Cas. Co.*, 514 F. Supp. 3d 1064, 1069 (W.D. Ark. 2021).  The court in *Torabi* determined

that rot and deterioration from mold were not covered under an insurance policy when the policy

stated:

> We do not insure for loss to the property described in Coverage A and Coverage B
> either consisting of, or directly and immediately caused by, one or more of the
> following: . . . j. rust, mold, or wet or dry rot . . . .  However, we do insure for any
> ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by
> this Section.

*Id.* at 1068.  The *Torabi* court reasoned:

> From the plain language of the policy, State Farm's interpretation of the ensuing loss clause is correct. The clause at issue here states that State Farm "insure[s] for any ensuing loss *from* items a. through n. unless the loss is itself a Loss Not Insured by this Section." (emphasis added). The use of "from" establishes that the ensuing loss clause covers items that result from one of the exclusions. However, the ensuing loss clause does not apply if the ensuing loss "is itself a Loss Not Insured by this Section." The ensuing loss provision does not provide coverage for rot and deterioration, which on the record on summary judgment is the only loss giving rise to the Torabis' claim. . . .

*Id.* at 1069.

The Court is mindful of these persuasive Arkansas authorities. In the absence of controlling Arkansas law, this Court also will examine other states' approaches to determining coverage under ensuing loss provisions with language similar to the policy language at issue here.

### 2.      Other States' Law On Similar Policies

States that have directly addressed the extent of coverage under ensuing loss provisions generally fall into one of two categories:  broad or narrow interpretations of the language.  The United States District Court for the District of Montana described these categories as follows:

> On the one hand, several courts have interpreted the provision broadly to provide coverage for losses to property that occur as a consequence of an excluded event, as long as the ensuing loss is otherwise covered by the policy. *See e.g. Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F.Supp.2d 1229 (N.D. Fla. 2012); *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wash.2d 501, 276 P.3d 300 (2012); *Arnold v. Cincinnati Ins. Co.*, 276 Wis.2d 762, 688 N.W.2d 708 (2004); *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F.Supp.2d 530 (2013); *Eckstein v. Cincinnati Ins. Co.*, 469 F.Supp.2d 444 (W.D. Ky. 2007).

> . . .

> On the other hand, several courts have interpreted the provision more narrowly, and have found ensuing loss provisions do not provide coverage for losses that result directly and proximately from the excluded peril.  Those courts generally require that there be a separate and independent cause of the loss for coverage to apply. *See e.g. TMW Enterprises, Inc. v. Federal Ins. Co.*, 619 F.3d 574 (6th Cir.

14

2010); *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948 (8th Cir. 2012); *Sapiro v. Encompass Ins.*, 221 F.R.D. 513 (N.D. Cal. 2004); *Acme Galvanizing Co. v. Fireman's Fund Ins. Co.*, 221 Cal.App.3d 170, 270 Cal.Rptr. 405 (1990); *Prudential Prop. & Cas. Ins. Co. v. Lillard–Roberts*, 2002 WL 31495830 (D. Or. June 18, 2002).

*Leep v. Trinity Universal Ins. Co.*, 261 F. Supp. 3d 1071, 1082–83 (D. Mont. 2017).

The Supreme Court of Washington described the broad-coverage interpretation of ensuing loss provisions related to faulty workmanship by providing the following example:

> Suppose a contractor miswires a home's electrical system, resulting in a fire and significant damage to the home. And suppose the homeowner's policy excludes losses caused by faulty workmanship, but the exclusion contains an ensuing loss clause. In this situation, the ensuing loss clause would preserve coverage for damages caused by the fire. But it would not cover losses caused by the miswiring that the policy otherwise excludes. Nor would the ensuing loss clause provide coverage for the cost of correcting the faulty wiring.

*Vision One, LLC*, 276 P.3d at 307. In *Vision One*, faulty shoring was installed as part of "a condominium project in downtown Tacoma[,]" concrete floors were poured weeks later, the shoring underneath the concrete gave way, "[t]he framing, rebar, and newly poured concrete came crashing down onto the lower level parking area," and the wet concrete hardened. *Id.* at 302. The all-risk policy included a workmanship exclusion and an ensuing loss provision. *Id.* at 308. "Collapse" was not specifically excluded under the policy. *Id.* The *Vision One* court ultimately held that, while the faulty shoring workmanship was not covered, the collapse was covered under the ensuing loss provision. *Id.* at 311. The Washington Supreme Court reinstated the trial court's ruling, which included an award for the concrete, rebar, and framing—but not the faulty shoring itself. *Id.* at 304, 311. Even under the more expansive test, the Washington Supreme Court noted that, "[i]f the ensuing loss is also an excluded peril or an excluded loss under the policy, there is no coverage." *Id.* at 307.

The court in *Balfour Beatty Construction* applied a narrow-coverage interpretation when similar policy language was involved.  968 F.3d at 511–12.  The policy language in that case provided:

**PERILS COVERED**

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

. . .

**PERILS EXCLUDED**

2.  "We" do not pay for loss or damage that is caused by or results from one or more of the following:

　　**c.  Defects, Errors, And Omissions –**

　　(1) "We" do not pay for loss or damage consisting of, caused by, or resulting from an act, defect, error, or omission (negligent or not) relating to:

　　a) design, specifications, construction, materials, or workmanship;. . . .

　　c) maintenance, installation, renovation, remodeling, or repair.

　　But if an act, defect, error, or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

　　(2) This exclusion applies regardless of whether or not the act, defect, error or omission:

　　a) originated at a covered "building or structure"; or

　　b) was being performed at "your" request or for "your" benefit.

968 F.3d at 507–08.  The Fifth Circuit held that, based on a plain reading, "an ensuing loss provision like the one presented here is only triggered when one (excluded) peril results in a distinct (covered) peril, meaning there must be two separate events for the Exception to trigger."

*Id.* at 511–12 (holding that the ensuing damages provisions did not cover damage to exterior windows caused by falling, molten pieces of metal produced in the course of an exterior welding job). In *Balfour Beatty Construction*, the court declined to consider whether the policy was ambiguous because ambiguity was not affirmatively plead, as is required under Texas law. *Id.* at 516.

### 3.    Construing The RLI Policy

Under the language of this Policy, coverage extends only to covered property (Dkt. Nos. 27, ¶ 2; 29, ¶ 2). The Policy states that "property covered" extends to "direct physical loss or damage caused by a *covered peril* to . . . 'your' materials, supplies, fixtures . . . and similar property of others that is in 'your' care, custody, or control . . . ." (Dkt. Nos. 27, ¶ 2; 29, ¶ 2) (emphasis added). This coverage is further limited to "materials, supplies, machinery, fixtures, and equipment that will become a permanent part of 'your' completed installation project." (Dkt. Nos. 27, ¶ 2; 29, ¶ 2).

RLI's Policy defines "perils covered" as "risks of direct physical loss or damage unless the loss is limited or caused by a peril as excluded." (Dkt. Nos. 27, ¶ 2; 29, ¶ 2). Under the Policy, when defining "perils excluded," RLI makes clear it does "not pay for loss or damage caused by or resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to: 1) . . . 2) workmanship or construction . . . ." (Dkt. No. 27, ¶ 2). Given the holding in *U.S.F & G* and the similarities between the language at issue in *U.S.F & G* and in the Policy, this Court determines that there is no ambiguity in the exclusionary language of the Policy, and there is no coverage due to the exclusionary language of the Policy.

The Court basis this conclusion, in part, on BRCF's argument:

In this case there was nothing wrong with the paint, the lines that the paint defined were in the wrong places, were not straight and sloppily applied. The Plaintiff is

> not seeking payment for the cost to redo the painted lines and logo.  But the vinyl
> floor under the paint was damaged and had to be removed.

(Dkt. No. 31, at 6).

The Court next turns to examine the ensuing loss provision of the Policy to determine whether this provision affords BRCF any coverage under the facts of this case.  RLI's Policy, for its ensuing loss provision, states:  "But, if a defect, error or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril."  (Dkt. Nos. 27, ¶ 2; 29, ¶ 2).

In this case, so as to trigger the language of the ensuing loss provision, BRCF has identified no "covered peril" as required "resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to:  1) . . . 2) workmanship or construction . . . ." (Dkt. Nos. 27, ¶ 2; 29, ¶ 2).  Under the facts agreed to by the parties as demonstrated by the record evidence before the Court, "the only reason the floor was rejected and had to [be] torn out was because it did not meet specifications, and that was due to the workmanship of Plaintiff's subcontractor, Mr. Liles" (Dkt. Nos. 27, ¶ 9; 29, ¶ 9).  "Other than Liles' improper application of the painting there was no other or separate damage or peril to the floor."  (Dkt. Nos. 27, ¶ 9; 29, ¶ 9).  Pursuant to the Policy, "loss or damage caused by or resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to:  1) . . . 2) workmanship or construction . . . ." are "perils excluded" for which there is no coverage.

To the extent BRCF attempts to rely on the vinyl floor in the gym as the covered peril, the vinyl floor in the gym describes what could be covered property, not a covered peril.  The Court finds distinguishable the facts, applicable law, and holding in *RLI Insurance Co. v. Willbros Construction (U.S.) LLC*, 2011 WL 4729866 (S.D. Tex. 2011).

There is no genuine issue of material fact in dispute as to the sole cause of the damage, and there is no genuine issue of material fact in dispute establishing that the sole cause of the damage is an excluded peril under the language of the Policy.

**IV.     Conclusion**

For these reasons, the Court grants RLI's motion for summary judgment (Dkt. No. 25). BRFC's claims are hereby dismissed with prejudice.  Judgment will be entered accordingly.

It is so ordered this 1st day of November, 2023.

Kristine G. Baker
United States District Judge

19